IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

RAYMONE STRINGER,
      Petitioner,

vs.                                  Case No.:  3:13cv645/LAC/EMT

JULIE L. JONES,
      Respondent.
_____/

## REPORT AND RECOMMENDATION

      This cause is before the court on Petitioner's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (doc. 1).  Respondent filed an answer and relevant portions of the state court record (doc. 24).  Petitioner filed a reply (doc. 27).

      The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

      The relevant aspects of the procedural background of this case are established by the state court record (*see* doc. 24).[1]  Petitioner was charged in the Circuit Court in and for Escambia County, Florida, Case No. 2008-CF-1469, with one count of trafficking in phenethylamines, specifically, Methylenedioxymethamphetamine ("MDMA") (10 grams or more, less than 200 grams) (Count 1), one count of trafficking in amphetamine or methamphetamine (200 grams or more) (Count 2), and one count

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (doc. 24).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

of felony failure to appear (Count 3) (Ex. B).  The State filed a nolle prosequi on the failure to appear

charge (*see* Ex. G).  A jury found Petitioner guilty of both drug trafficking charges as charged in an

amended information (Exs. B, F).  The court adjudicated Petitioner guilty and sentenced him to a

mandatory minimum term of fifteen years in prison on Count 2, and a concurrent mandatory minimum

term of three years in prison on Count 1, with presentence jail credit of 263 days (Ex. G).  Petitioner

appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D09-

6574 (Exs. H, I).  On February 15, 2011, the First DCA affirmed the judgment per curiam without

written opinion (Ex. K).  Stringer v. State, 53 So. 3d 1031 (Fla. 1st DCA 2011) (Table).  The mandate

issued March 3, 2011 (Ex. L).

On November 18, 2011, Petitioner filed a motion for post-conviction relief, pursuant to Rule

3.850 of the Florida Rules of Criminal Procedure (Ex. M).  The state circuit court struck the motion

as facially insufficient with leave to amend (Ex. N).  Petitioner filed an amended motion (Ex. O).  The

court held a limited evidentiary hearing on one of Petitioner's claims (Ex. S).  Petitioner was

represented by counsel at the hearing (*see id.*).  The court denied the amended Rule 3.850 motion in

an order rendered November 29, 2012 (Ex. T).  Petitioner, proceeding pro se, appealed the decision

to the First DCA, Case No. 1D13-0037 (Ex. U).  The First DCA affirmed the decision per curiam

without written opinion on December 3, 2013, with the mandate issuing December 31, 2013 (Exs. W,

X).  Stringer v. State, 127 So. 3d 508 (Fla. 1st DCA 2013) (Table).

On April 5, 2013, Petitioner filed a petition for writ of habeas corpus in the First DCA,

alleging ineffective assistance of appellate counsel, Case No. 1D13-1614 (Ex. Y).  The court denied

the petition as untimely on May 1, 2013 (Ex. AA).  Stringer v. State, 112 So. 3d 121 (Fla. 1st DCA

2013) (Mem).

Petitioner filed the instant federal habeas action on December 23, 2013 (doc. 1).

II.     STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a

writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon

a showing that his custody is in violation of the Constitution or laws of the United States.  As the

instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas

review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective

Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19.  In relevant

part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any claim
> that was adjudicated on the merits in State court proceedings unless the adjudication
> of the claim–
>
> > (1)  resulted in a decision that was contrary to, or involved an
> > unreasonable application of, clearly established Federal law, as determined
> > by the Supreme Court of the United States; or
> > (2)  resulted in a decision that was based on an unreasonable
> > determination of the facts in light of the evidence presented in the State court
> > proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in <u>Williams v.

Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2]  The appropriate test was

described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court
> to grant a state prisoner's application for a writ of habeas corpus with respect to
> claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue
> only if one of the following two conditions is satisfied—the state court adjudication
> resulted in a decision that (1) "was contrary to . . . clearly established Federal law,
> as determined by the Supreme Court of the United States," or (2) "involved an
> unreasonable application of . . . clearly established Federal law, as determined by the
> Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas
> court may grant the writ if the state court arrives at a conclusion opposite to that
> reached by this court on a question of law or if the state court decides a case
> differently than this Court has on a set of materially indistinguishable facts.  Under the
> "unreasonable application" clause, a federal habeas court may grant the writ if the
> state court identifies the correct governing legal principle from this Court's decisions
> but unreasonably applies that principle to the facts of the prisoner's case.

<u>Id.</u>, 529 U.S. at 412–13 (O'Connor, J., concurring); <u>Ramdass v. Angelone</u>, 530 U.S. 156, 120 S. Ct.

2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed

---

[2] Unless otherwise noted, references to <u>Williams</u> are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim. Moreover, where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law. *See* Henderson v. Campbell, 353 F.3d 880, 890 n. 15 (11th Cir. 2003).

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409. Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it. Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf.*

Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at 411). The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. *See Gill*, *supra* at 1291–92. Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. *See* Harrington v. Richter, 562 U.S. 86, 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011); *see also* Gill, *supra,* at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see, e.g.,* Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact."). The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See* Gill, 633 F.3d at 1292. A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. *Id.*

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See* Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

## III.   EXHAUSTION AND PROCEDURAL DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, *see* 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)). To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. Duncan, 513 U.S. at 365–66;

O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277–78.

The Supreme Court has provided lower court with guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  404 U.S. at 277.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," id., 404 U.S. at 278, the Court rejected the contention in that case that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is not enough that a petitioner make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982).  In Anderson, the habeas petitioner was granted relief by the Sixth Circuit Court of Appeals on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  459 U.S. at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)).  The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law." Anderson, 459 U.S. at 7 (internal quotation marks omitted).  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim. Id., 459 U.S. at 7 & n.3.  Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought. Id.

Years later, the Supreme Court readdressed the "fair presentation" requirement in Duncan v. Henry, 513 U.S. 364.  The Duncan Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order

to obtain federal review of the issue.[3]  The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court."  Duncan, 513 U.S. at 365–66.  More recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  Baldwin v. Reese, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004).  In Baldwin, the Supreme Court recognized that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"  Id., 541 U.S. at 32.  This language, while not part of the Court's holding, provides helpful instruction.  With regard to this language, the Eleventh Circuit explained in McNair v. Campbell, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion.  However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'"  McNair [v. Campbell], 315 F. Supp. 2d at 1184 (quoting Vasquez v. Hillery, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)).  This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302-03 (citations omitted).[4]

_____

[3] The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.  513 U.S. at 366.

[4] In his initial brief before the Court of Criminal Appeals, McNair cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law."  McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005).  The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments.

The Eleventh Circuit, prior to <u>Duncan</u>, had broadly interpreted the "fair presentation" requirement.  After <u>Duncan</u>, however, the Eleventh Circuit has taken a more narrow approach.  For example, in <u>Zeigler v. Crosby</u>, the court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the United States Constitution.  345 F.3d 1300, 1307 (11th Cir. 2003).  The Eleventh Circuit specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words:  "Appellant was denied due process and a fair trial. . . .," which could be interpreted as asserting a fair trial claim under the Due Process Clause of the Florida Constitution.  *Id.* at 1308 n.5.  The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases.  The court concluded that petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us."  *Id.*

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred from federal review.  *See* <u>O'Sullivan</u>, 526 U.S. at 839–40, 848; <u>Bailey v. Nagle</u>, 172 F.3d 1299, 1302–03 (11th Cir. 1999).  This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default.  *See* <u>Coleman v. Thompson</u>, 501 U.S. 722, 734–35 and n.1, 111 S. Ct. 2546, 2555 and n.1, 115 L. Ed. 2d 640 (1991); <u>Caniff v. Moore</u>, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); <u>Chambers v. Thompson</u>, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* <u>Tower v. Phillips</u>, 7 F.3d 206, 210 (11th Cir. 1993); <u>Parker v. Dugger</u>, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991).  In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would

---

*Id.*

be futile under the state's procedural default doctrine.  <u>Bailey</u>, 172 F.3d at 1303.  In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question.  <u>See</u> <u>Harris v. Reed</u>, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989).  The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.  <u>Lee v. Kemna</u>, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).  The adequacy requirement has been interpreted to mean that the rule must be "firmly established and regularly followed," <u>Siebert v. Allen</u>, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," <u>Judd v. Haley</u>, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner.  <u>Ford v. Georgia</u>, 498 U.S. 411, 424–25, 111 S. Ct. 850, 858, 112 L. Ed. 2d 935 (1991); <u>Upshaw v. Singletary</u>, 70 F.3d 576, 579 (11th Cir. 1995).

The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision.  <u>Judd v. Haley</u>, 250 F.3d 1308, 1313 (11th Cir. 2001).  First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim.[5]  Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law.  Third, the state procedural rule must be adequate.  <u>Id.</u>  The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion.  <u>Id.</u>

To overcome a procedural default such that the federal habeas court may consider the merits of a claim, the petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice.  <u>Tower</u>, 7 F.3d at 210; <u>Parker</u>, 876 F.2d 1470.  "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."  <u>McCleskey v. Zant</u>, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting <u>Murray v. Carrier</u>, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)).  To satisfy the miscarriage of

---

[5] The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits.  <u>Marek v. Singletary</u>, 62 F.3d 1295, 1302 (11th Cir. 1995); <u>Alderman v. Zant</u>, 22 F.3d 1541 (11th Cir. 1994).

justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." <u>Schlup v. Delo</u>, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995).  "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." <u>Schlup</u>, 513 U.S. at 327.  Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

*Id.*  Although a habeas petitioner asserting a convincing claim of actual innocence need not prove diligence to overcome a procedural bar, timing is a factor relevant in evaluating the reliability of a petitioner's proof of innocence.  *See* <u>McQuiggin v. Perkins</u>, — U.S. —, 133 S. Ct. 1924, 1935, 185 L. Ed. 2d 1019 (2013).  As the Court stated in <u>Schlup</u>, "[a] court may consider how the timing of the submission and the likely credibility of [a petitioner's] affiants bear on the probable reliability of . . . evidence [of actual innocence]."  513 U.S. at 332; *see also* <u>House</u>, 547 U.S. at 537.

Within this framework, the court will review Petitioner's claims.

## IV.  PETITIONER'S CLAIMS

A.  <u>Ground One:  "A positive alert to the exterior of a vehicle by a drug detector dog does not establish probable cause to search the vehicle without evidence that the dog's previous alerts in the field reliably resulted in the discovery of contraband."</u>

Petitioner alleges the police did not have probable cause to search his vehicle, because the State failed to present any evidence that the police canine's alert to the vehicle was reliable (doc. 1 at 3–4).  He alleges the State was required to establish reliability with evidence that the canine's previous alerts to vehicles in analogous circumstances yielded contraband to which the canine was conditioned to alert (*id.*).  Petitioner asserts he raised this claim in his Rule 3.850 motion, but the court determined the claim was procedurally barred because it should have been raised on direct appeal (*id.*).  He alleges his appellate counsel could have raised this issue on direct appeal but failed to do so (*id.*).  Petitioner asserts he raised a claim of ineffective assistance of appellate counsel in his state habeas petition, but the state court denied the petition (*id.* at 4–5).

Respondent contends Petitioner procedurally defaulted this claim by failing to raise it on direct appeal (doc. 24 at 6–9).  Respondent further contends Petitioner did not present this particular claim of ineffective assistance of appellate counsel in his state habeas petition (*id.* at 9).  Notwithstanding the exhaustion issue, Respondent contends the claim is not cognizable under <u>Stone v. Powell</u>, 428 U.S. 465, 96 S. Ct. 3037, 49 L. Ed. 2d 1067 (1976), because Petitioner had an opportunity to litigate the issue in the trial court, but he failed to do so (*id.*).  Respondent additionally contends Petitioner's claim is without merit (*id.* at 10).

The state court record demonstrates that Petitioner raised this claim as Issue One in his amended Rule 3.850 motion (Ex. O at 89–95).  The state court disposed of it as follows:

> By its very terms, rule 3.850 provides that "[t]his rule does not authorize relief based on grounds that could have or should have been raised at trial and, if properly preserved, on direct appeal of the judgment and sentence."  Such a claim regarding the admissibility of the evidence is properly raised at trial and on direct appeal, and not via rule 3.850.  Defendant is not entitled to relief on this basis.

(Ex. T at 201) (footnote omitted).

Florida's rule prohibiting post-conviction review of claims that could have or should have been raised at trial and, if properly preserved, on direct appeal, is firmly established and regularly followed.  *See* Fla. R. Crim. P. 3.850(c); <u>Smith v. State</u>, 445 So. 2d 323, 325 (Fla. 1983) ("Issues which either were or could have been litigated at trial and upon direct appeal are not cognizable through collateral attack.").  Therefore, the state court's application of this procedural rule is entitled to deference.

Petitioner alleges ineffective assistance of appellate counsel as cause for his failure to raise the Fourth Amendment claim on direct appeal.  Although ineffective assistance of counsel which rises to the level of a constitutional deprivation can serve as cause for purposes of a procedural default analysis, the issue of ineffective assistance must first be presented as an independent claim in the state courts, and exhausted therein.  <u>Murray</u>, 477 U.S. at 488; <u>Orazio v. Dugger</u>, 876 F.2d 1508 (11th Cir. 1989).

Here, the procedural default occurred in Petitioner's direct appeal.  In Florida, a claim of ineffective assistance of appellate counsel ("IAAC") is actionable in a petition for writ of habeas corpus filed in the appellate court to which the appeal was taken.  *See* Fla. R. App. P. 9.141(d).

Petitioner filed a state habeas petition alleging IAAC in the First DCA (Ex. Y).  He argued appellate counsel should have presented three issues which were preserved in the trial court:  (1) the trial court erred by denying the defense's motion to suppress his confession, (2) the trial court erred by denying the defense's motion to suppress evidence, and (3) the trial court erred by denying the defense's motion in limine to exclude "Williams rule" evidence (*id.*).  Petitioner did not argue that appellate counsel was ineffective for failing to raise any other issues (*id.*).  According to the state court record, the issue preserved in the trial court with respect to the motion to suppress evidence was that the police should have obtained a search warrant prior to searching Petitioner's car, and there were no exigent circumstances justifying a search of the car (*see* Ex. D).  The issue of the State's failure to present evidence that the canine's alert to Petitioner's vehicle was reliable was not preserved in the trial court (*see id.*); therefore, Petitioner's state habeas petition did not fairly present an IAAC claim based upon that issue.  Because Petitioner did not exhaust an independent claim of IAAC with regard to appellate counsel's failure to present Ground One on direct appeal, that claim cannot serve as cause to excuse his procedural default of Ground One.

Further, Petitioner has not demonstrated he is entitled to federal review of Ground One through any other recognized exception to the procedural bar.  Petitioner alleges he is innocent of the crimes, and that his conviction and sentence constitute "a terrible injustice" (doc. 27 at 5).  He alleges the police coerced his confession by telling his wife "that if she wanted to see her husband, he better cooperate with them or she want [sic] see him for a long time" (*id.* at 5–6).  Petitioner alleges his wife agreed to send this federal habeas court a "notarized letter" stating that the police told her this (*id.* at 6).  An "actual innocence" exception to the AEDPA's one-year time limit requires the petitioner (1) to present new reliable evidence that was not presented at trial, and (2) to show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt" in light of the new evidence.  *See* Rozzelle v. Sec'y, Fla. Dep't of Corr., 672 F.3d 1000, 1011 (11th Cir. 2012) (quoting Schlup, 513 U.S. at 324, 327).  As previously discussed, to be credible, "such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Schlup, 513 U.S. at 324.

In the instant case, Petitioner asserts he is innocent because his confession was the product of police officers' coercing his wife.  Neither the Supreme Court nor the Eleventh Circuit has decided whether Schlup permits a claim of actual innocence based upon "new evidence" of a coerced or otherwise involuntary confession, with no new reliable evidence that the petitioner did not actually commit the acts which constituted the crime.[6]  The Eleventh Circuit's holding in Rozelle suggests that the Eleventh Circuit would not extend the exception to such circumstances.  In Rozelle, the court held that Schlup's actual innocence "gateway" does not extend to a petitioner who committed the act or acts that constituted the crime and whose alleged "actual innocence" of the conviction is premised on being guilty of only a lesser degree of the crime.  672 F.3d at 1015.  In the instant case, Petitioner has not supported his allegations with any new reliable evidence showing that he did not commit the acts that constituted the drug trafficking offenses.  Therefore, he has failed to show he is entitled to review of his procedurally defaulted claim through the "actual innocence" or "fundamental miscarriage of justice" gateway.

Petitioner procedurally defaulted Ground One in the state courts, and he failed to show he is entitled to a merits review of his claim through any recognized exception to the procedural bar. Therefore, he is not entitled to relief on Ground One.

B.    Ground Two:  "Did the trial court err in denying Defendant's claim that his trial counsel was ineffective for failing to advise the Defendant of the statutory maximum that he faced when offered a seven (7) years negotiated plea in exchange for his plea of guilty."

Petitioner alleges defense counsel never informed him of the statutory maximum penalties for the drug trafficking charges (doc. 1 at 5–7).  He alleges the State made a plea offer of seven years, but he rejected it (*id.*).  Petitioner alleges had he known the statutory maximum, he would have accepted the State's plea offer (*id.*).  Petitioner states he raised this claim in his Rule 3.850, and the court held an evidentiary hearing (*id.*).  He contends the court erroneously credited the testimony of one of his defense attorneys, and her testimony was insufficient to prove that Petitioner was aware of the maximum penalties at the time he rejected the plea offer (*id.*).

---

[6] Similarly, neither court has decided whether Schlup permits a claim of actual innocence based on "new reliable" evidence of a complete affirmative defense that renders the conduct of conviction wholly noncriminal and requires acquittal.  *See* Rozelle, 672 F.3d at 1015.

Respondent contends the state court's adjudication of the claim was not contrary to or an unreasonable application of clearly established federal law (doc. 24 at 10–14).

      1.     Clearly Established Federal Law

"Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process." Lafler v. Cooper, — U.S. —, 132 S. Ct. 1376, 1384, 182 L. Ed. 2d 398 (2012) (citing Missouri v. Frye, — U.S. —, 132 S. Ct. 1399, 1404, — L. Ed. 2d — (2012), and McMann v. Richardson, 397 U.S. 759, 771, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970)). "If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." Lafler, 132 S. Ct. at 1387. The two-part test articulated in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), applies to claims that counsel was ineffective during plea negotiations. Lafler, 132 S. Ct. at 1384 (applying Strickland's two-part test to federal habeas petitioner's claim that counsel was ineffective for advising him to reject a plea offer); Frye, 132 S. Ct. at 1404, 1409–10 (applying Strickland's two-part test to federal habeas petitioner's claim that counsel was ineffective for failing to communicate a prosecution plea offer before it lapsed); Hill v. Lockhart, 474 U.S. 52, 48, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985) (applying Strickland's two-part test to defendant's challenge to his guilty plea based on ineffective assistance of counsel).

Strickland's first prong requires a defendant to show "'that counsel's representation fell below an objective standard of reasonableness.'" Hill, 474 U.S. at 57 (quoting Strickland, 466 U.S. at 688). The focus of inquiry under the performance prong of the Strickland standard is whether counsel's assistance was "reasonable considering all the circumstances." See Strickland, 466 U.S. at 691. "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689. Indeed, the Supreme Court warned about second-guessing professional judgments made by counsel:

> [T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments. All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court. Even then the truth will often be in dispute. In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case. Counsel must predict how the facts, as he understands them, would be viewed by a court . . . .

> Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be. Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts.  That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing.

McMann v. Richardson, 397 U.S. 759, 769–70, 90 S. Ct. 1441, 1448, 25 L. Ed. 2d 763 (1970).

In a plea situation, counsel must provide advice "within the range of competence demanded of attorneys in criminal cases." Hill, 474 U.S. at 56–57 (quoting McMann, 397 U.S. at 771).  Under this standard, representation is ineffective only if counsel commits "serious derelictions" of his duty when advising the accused.  Stano v. Dugger, 921 F.2d 1125, 1150–51 (11th Cir. 1991).  Absent such blatant errors, however, the court should "indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." Yordan v. Dugger, 909 F.2d 474, 477 (11th Cir. 1990).  The Eleventh Circuit has commented that "[t]he right to competent plea bargain advice is at best a privilege that confers no certain benefit," because a defendant "may make a wise decision" without assistance of counsel or a "bad one despite superior advice from his lawyer." Wofford v. Wainwright, 748 F.2d 1505, 1508 (11th Cir. 1984) (per curiam).  "[C]ounsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between [entering a plea] and going to trial." Id.  This requires counsel to "offer his informed opinion as to the best course to be followed" and impart "a general knowledge of the possible legal consequences of facing trial" to the defendant.  Id. Therefore, a defendant's failure to "correctly assess every relevant factor entering into his decision" does not undermine a validly entered guilty plea.  Id. at 1509.

Strickland's second prong requires a defendant to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.  In the context of pleas, "[t]he . . . 'prejudice' requirement . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Hill, 474 U.S. at 59.

"Surmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 130 S. Ct. 1473, 1485, 176 L. Ed. 2d 284 (2010). "Establishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult." <u>Richter</u>, 131 S. Ct. at 788. As the <u>Richter</u> Court explained:

> The standards created by <u>Strickland</u> and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.

*Id.* (citations omitted).

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. <u>Strickland</u>, 466 U.S. at 698; <u>Collier v. Turpin</u>, 177 F.3d 1184, 1197 (11th Cir. 1999).

> 2.     Federal Review of State Court Decision

Petitioner presented this issue as Issue Two 2 in his amended Rule 3.850 motion (Ex. O at 95–99). The state circuit court adjudicated the claim as follows:

> In his second claim, Defendant asserts that his trial counsel was ineffective for failing to advise him of the statutory maximum penalties he faced. Because of this lack of information, Defendant asserts that he rejected a favorable seven-year plea offer, and that had he been properly advised, he would have accepted the offer. An evidentiary hearing was convened as to this claim.

> In order to be entitled to postconviction relief on a claim of ineffectiveness regarding a plea offer, a defendant "must allege and prove that (1) counsel failed to convey a plea offer or misinformed the defendant concerning the possible sentence he faced, (2) the defendant would have accepted the plea but for counsel's failures, and (3) acceptance of the plea would have resulted in a lesser sentence than was ultimately imposed," <u>Morgan v. State</u>, 991 So. 2d 835, 839–840 (Fla. 2008). <u>See</u> also <u>Pennington v. State</u>, 34 So. 3d 151, 155 (Fla. 1st DCA 2010) (" . . . [T]his Court has required an evidentiary hearing where the defendants alleged (1) that their attorneys advised them to reject plea offers without first informing them of the maximum possible sentences they faced, (2) that they would have accepted the plea offers had they been advised of the statutory maximum, and (3) that they ultimately received harsher sentences than the ones proposed in the plea offers.")

Defendant testified at evidentiary hearing [sic] that he was unaware that he faced a 15-year minimum mandatory term if convicted of Count 2, and that he did not know he faced a possible maximum term of 30 years on his first degree felony charges. He further stated that the first time he became aware of these penalties was at his sentencing proceedings. His mother-in-law and wife also testified that Defendant's counsel had not made them aware of a 15-year minimum mandatory term or of Defendant's maximum sentencing exposure during the course of the trial preparation. However, his trial counsel, Lori Raybon Pachucki, testified that Defendant was "very well aware" of the statutory maximum penalties and the mandatory minimum penalties. She further testified that the plea offer was discussed with Defendant, but that "he just didn't want to do it." Based on the totality of the information before the Court, the Court finds the testimony of counsel to be credible.[FN 4]. Defendant is not entitled to relief on this basis.

> [FN 4: Defendant also testified that he had been assured by counsel that Count 2 would be "dropped." Defendant did not make such an allegation in his motion, and therefore, the issue is not properly before the Court for determination. However, if this claim were properly before the Court, the Court would find counsel's testimony that no such promises were made to be credible.]

(Ex. T at 201–03). The First DCA affirmed the decision (*see* Ex. W).

"Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review." Consalvo v. Sec'y for Dep't of Corr., 664 F.3d 842, 845 (11th Cir. 2011); *see also* Gore v. Sec'y for Dep't of Corr., 492 F.3d 1273, 1300 (11th Cir. 2007) (noting that while reviewing court also gives a certain amount of deference to credibility determinations, that deference is heightened on habeas review) (citing Rice v. Collins, 546 U.S. 333, 341–42, 126 S. Ct. 969, 163 L. Ed. 2d 824 (2006) (stating that "[r]easonable minds reviewing the record might disagree about the [witness'] credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination")). Federal habeas courts have "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." Marshall v. Lonberger, 459 U.S. 422, 434, 103 S. Ct. 843, 74 L. Ed. 2d 646 (1983); *see also* Baldwin v. Johnson, 152 F.3d 1304, 1317 (11th Cir. 1998); Smith v. Kemp, 715 F.2d 1459, 1465 (11th Cir. 1983) ("Resolution of conflicts in evidence and credibility issues rests within the province of the state habeas court, provided petitioner has been afforded the opportunity to a full and fair hearing."). Questions of the credibility and demeanor of a witness are questions of fact. *See*

Consalvo, *supra* (citing Freund v. Butterworth, 165 F.3d 839, 862 (11th Cir. 1999) (en banc)).  The AEDPA affords a presumption of correctness to a factual determination made by a state court; the habeas petitioner has the burden of overcoming the presumption of correctness by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e).

Petitioner argues the state court should have believed his testimony and the testimony of his two witnesses instead of the testimony of Ms. Raybon (one of the public defenders who represented him) (*see* doc. 1 at 6).  However, he has failed to rebut the correctness of the state court's credibility finding by clear and convincing evidence.  Therefore, this court defers to the state court's crediting of Ms. Raybon's testimony.

Ms. Raybon testified she represented Petitioner in the drug trafficking case (Ex. S at 180–94).  She testified she represented him after his retained attorney withdrew in January of 2009, and throughout the criminal proceedings (*see id.* at 137).  Ms. Raybon testified she advised Petitioner of the statutory maximum and the mandatory minimum for each of the trafficking counts; specifically, as to Count 1, that he faced a maximum of thirty years with a three-year mandatory minimum, and as to Count 2, that he faced a maximum of thirty years with a fifteen-year mandatory minimum.  Ms. Raybon testified Petitioner was "very well aware" of the statutory maximums and mandatory minimums.  She testified she relayed the State's seven-year plea offer to Petitioner, with the knowledge of his maximum sentence exposure, and Petitioner stated he did not want to accept the plea offer.  Ms. Raybon testified that another public defender, Tony Henderson, may have had more discussions with Petitioner about the plea offer, but Petitioner "just didn't want the offer."[7]  This testimony fully supports the state court's finding that Petitioner was aware of the statutory maximums and mandatory minimums he faced on both drug trafficking counts at the time he rejected the plea offer.  Based upon this finding, Petitioner failed to satisfy the deficient performance prong of the Strickland standard.

---

[7] Petitioner contends the state court erred by failing to require the State to call Tony Henderson as a witness (*see* doc. 1 at 6; doc. 27 at 4).  However, as the parties discussed at the commencement of the evidentiary hearing, Petitioner had the burden of proof and was thus responsible for securing the presence of witnesses he believed necessary to prove his case (Ex. S at 136–40).  Petitioner's post-conviction counsel requested that the court proceed with the evidentiary hearing and, if necessary, supplement the record with Mr. Henderson's testimony (*id.* at 139–40).  The court agreed, and the hearing proceeded (*id.*).  At the conclusion of the evidentiary hearing, Petitioner's post-conviction counsel advised the court that, based upon the testimony of Ms. Raybon, "there would be no need to solicit any additional testimony from Tony Henderson" (*id.* at 198).

Petitioner has not demonstrated that the state court's adjudication of this claim was based upon an unreasonable determination of the facts. Nor has he shown that the state court's adjudication was contrary to or an unreasonable application of clearly established federal law. Therefore, he is not entitled to relief on Ground Two.

      C.      <u>Ground Three: "Did the trial court err when denying Petitioner's Motion for Judgment of Acquittal as the State failed to present one scintilla of evidence that he knew methamphetamine was included in the contraband he purchased."</u>

Petitioner alleges his defense at trial was that he believed he was trafficking only in ecstasy or MDMA, but he had no knowledge that the ecstasy also had methamphetamine (doc. 1 at 8–9). He alleges the presence of methamphetamine was discovered only after the ecstasy was seized from his car and tested by the State crime lab (*id.*). Petitioner alleges the State failed to present any evidence that he knew of the presence of methamphetamine; therefore, the trial court's denial of defense counsel's motion for judgment of acquittal ("JOA") as to Count 2 violated his constitutional right to due process (*id.*). Petitioner asserts he raised this claim on direct appeal (*id.* at 9).

Respondent contends Petitioner failed to fairly present a federal due process claim to the state courts (doc. 24 at 14–15). Respondent asserts Petitioner's trial counsel never mentioned the Constitution in arguing the motion for JOA in the trial court (*id.*). Further, Petitioner's cursory mention of the Constitution in his brief on appeal was insufficient to fairly present a federal claim (*id.*). Respondent contends notwithstanding Petitioner's failure to exhaust his claim, the claim is without merit (*id.* at 16).

The state court record demonstrates that in Petitioner's brief on direct appeal of his conviction, he argued the trial court erred by denying his motion for JOA as to Count 2, because the State failed to prove that Petitioner knew that the substance in which he trafficked was methamphetamine (Ex. I at 11–15). Petitioner argued that under Florida law, the offense of drug trafficking included the element that the defendant knew that the substance was the specific substance alleged (*id.*). Petitioner argued that in his case, the only witness to mention the word "methamphetamine" was the State's chemist, who analyzed the pills recovered from Petitioner's vehicle and determined that some of them were methamphetamine (State's exhibits 17, 18, 19, 22, 23, 26, 27, 29, 30, 31), other pills were a mixture of MDMA and methamphetamine (State's exhibits 20, 28), and yet other pills were MDMA (State's exhibit 29) (*id.*). Petitioner argued that no other witness testified regarding trafficking in

methamphetamine (the basis for Count 1) (*id.*). Petitioner argued his defense at trial was that he thought he was trafficking in "ecstacy, i.e., MDMA only," and he denied any knowledge of methamphetamine (*id.* at 7–8, 11–15). Petitioner argued, citing Florida law, that the court must grant the JOA when the evidence fails to address every element of the crime charged (*id.*). Only in Petitioner's closing paragraph did he even mention federal law:

> In the final analysis, the state did not present one scintilla of evidence that remotely suggested, let alone proved beyond a reasonable doubt, that appellant was involved with methamphetamine. A conviction obtained without the necessary supporting evidence is a violation of due process. U.S.C.A. amend. 6 & 14. Accordingly, the trial judge reversibly erred by not granting appellant's motion for judgment of acquittal. The error cannot be considered harmless as lack of knowledge of the presence of methamphetamine was appellant's defense at trial. <u>Abbott v. State</u>, [744 So. 2d 578 (Fla. 2d DCA 1999)].

(Ex. S at 14–15).

Petitioner's passing reference to his federal constitutional right to due process in the concluding paragraph of his brief, which substantively argued that Florida's drug trafficking statute required proof of knowledge of the illicit nature of the substance, and that the State presented no evidence that Petitioner knew that some of the pills were composed of methamphetamine, was insufficient to alert the state court that he was asserting a federal sufficiency of the evidence claim. Therefore, the claim is unexhausted. *See* <u>McNair</u>, 416 F.3d at 1303–04 (petitioner did not fairly present to the state courts his federal claim that the jury's consideration of extraneous evidence violated his Sixth Amendment right to a fair trial, where the caption of his claim in his state court brief referred only to state law, all of the substantive argument addressed state law, and the argument included citation to only one federal case (included in a string citation) and a reference in the concluding paragraph to the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution); *see also, e.g.*, <u>Ramos v. Sec'y, Dep't of Corr.</u>, 441 F. App'x 689, 696–97 (11th Cir. 2011) (unpublished) (petitioner's federal sufficiency of the evidence claim was not exhausted where petitioner made only a passing reference to his federal constitutional right to due process in arguing that the trial court improperly denied his motion for judgment of acquittal because State failed to sufficiently prove the premeditation element of murder); <u>Pearson v. Sec'y, Dep't of Corr.</u>, 273 F. App'x 847, 850 (11th Cir. 2008) (unpublished) (petitioner's federal sufficiency of evidence claim

was not exhausted where petitioner cited exclusively to Florida cases in state court and addressed Florida law in all of his substantive arguments, even though Florida courts assess sufficiency of evidence under standard identical to federal standard); Cook v. McNeil, 266 F. App'x 843, 845–46 (11th Cir. 2008) (unpublished) (petitioner did not alert the state court to the alleged federal nature of his sufficiency of the evidence claim and therefore failed to exhaust his federal due process claim; even though petitioner moved for judgment of acquittal and although Florida courts assess the sufficiency of the evidence under the standard applied in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 2798, 61 L.Ed.2d 560 (1979), petitioner cited exclusively to the state cases and all of his substantive arguments addressed Florida law; "the tenor of [petitioner's] narrow arguments that challenged the characterization of his knife and the sequence of his actions under the Florida statute did not bring a federal claim about due process to the attention of the state appellate court."). *But see* Mulinix v. Sec'y for Dep't of Corr, 254 F. App'x 763 (11th Cir. 2007) (unpublished) (petitioner's federal sufficiency of evidence claim was exhausted where the petitioner presented identical argument to state and federal courts, and Florida courts' sufficiency of evidence standard was identical to federal standard).[8]

Now, any further attempt to exhaust the claim in the state courts would be futile, because Petitioner's claim would be procedurally barred under Florida law. *See* Smith, 445 So. 2d at 325 ("Issues which either were or could have been litigated at trial and upon direct appeal are not cognizable through collateral attack."); *see also* Rodriquez v. State, 919 So. 2d 1252, 1262 n.7 (Fla. 2005) (issues were procedurally barred because they should have been, but were not, raised on direct appeal).

Petitioner has not shown cause for his failure to fairly present his federal due process claim to the state courts.  Nor has he demonstrated he is entitled to review of his claim through any other recognized exception to the procedural bar.  Therefore, he is not entitled to federal review of Ground Three.

   D.     Ground Four: "Petitioner was convicted on an unconstitutional drug statute, 893.135 on its face, violating the Fourteenth Amendment to the United States Constitution."

_____

[8] The undersigned cites unpublished opinions of the Eleventh Circuit only as persuasive authority and recognizes that the opinions are not considered binding precedent. *See* 11th Cir. R. 36-2.

Petitioner alleges the state statute he was convicted of violating, Florida Statute § 893.135, is unconstitutional under the Due Process Clause because it lacks an intent element and thus imposes strict liability (doc. 1 at 10–11). He asserts he presented this claim to the state court in his Rule 3.850 motion (*id.*).

Respondent argues that although Petitioner raised this claim in his Rule 3.850 motion, that was not the proper vehicle for doing so (doc. 24 at 17). Instead, the claim should have been raised in the trial court and on direct appeal (*id.*). Therefore, the claim is procedurally barred from federal review (*id.*). Notwithstanding the procedural bar, Respondent contends the claim is without merit (*id.*). Respondent argues the Florida Supreme Court rejected Petitioner's argument in State v. Adkins, 96 So. 3d 412 (Fla. 2012) (*id.*). Additionally, in Shelton v. Sec'y, Dep't of Corr., 691 F.3d 1348 (11th Cir. 2012), *cert. denied*, 133 S. Ct. 1856 (2013), the Eleventh Circuit expressly held that a state court's rejection of this exact claim is not an unreasonable application of clearly established federal law (*id.*).

Petitioner raised this claim as Issue Three in his amended Rule 3.850 motion (Ex. O at 99–114). The state circuit court adjudicated the claim as follows:

> In his final claim, Defendant alleges that the statute under which he was convicted is facially unconstitutional. He bases his claim in large part on the recent federal case of Shelton v. Sec't, Dep't of Corr., 802 F. Supp. 2d 1289 (M.D. Fla. July 27, 2011). "A direct appeal is the proper avenue for a facial constitutional challenge to a criminal statutes." Delancy y. Tucker, 88 So. 3d 1036, 1037 (Fla. 1st DCA 2012). However, even if properly raised, Defendant would not be entitled to relief on this claim, as Defendant's argument is contrary to Florida precedent.[FN 5] See e.g. State v. Adkins, 96 So. 3d 412 (Fla. 2012); Flaig v. State, 74 So. 3d 138 (Fla. 1st DCA 2011).

> [FN 5:  Shelton addressed the constitutionality of section 893.13, Florida Statutes, not section 893.135.]

(Ex. T at 203).

The state court expressly relied on a firmly established and regularly followed state procedural rule in resolving Petitioner's claim, that is, the facial constitutional challenge to the Florida statute should have been raised on direct appeal. Moreover, even "where a state court has ruled in the alternative, addressing both the independent state procedural ground and the merits of the federal claim, the federal court should apply the state procedural bar and decline to reach the merits of the

claim." <u>Alderman</u>, 22 F.3d at 1549; <u>Marek</u>, 62 F.3d at 1302. Therefore, this court must honor the state court's procedural bar. Petitioner has not shown cause for his procedural default; nor has he shown he is otherwise entitled to a federal merits review of his claim. Accordingly, he is not entitled to relief on Ground Four.

> E. <u>Ground Five: "Trial court erred in denying Defendant's motion to suppress taped statement that was coerced during an interrogation by the Pensacola Police Department."</u>

Petitioner alleges that after police searched his vehicle and discovered narcotics, he was transported to the police station (doc. 1 at 12). He alleges police read him <u>Miranda</u> warnings and then interrogated him (*id.*). Petitioner alleges that during the interrogation, an officer stated, "The faster you talk and get this shit out, the quicker you will be able to help yourself." (*id.*). Petitioner alleges the officer then told him he was facing a fifteen-year minimum mandatory sentence (*id.*). He alleges the officer stated they (the officers) will go home tonight, but "in order for you to go home and see your wife and kids, besides fifteen years from today, you need to do the right thing; you know what I am talking about." (*id.*). Petitioner contends the officers' false promise of going home and seeing his family if he "did the right thing" constituted an improper police tactic and rendered his confession involuntary (*id.* at 13).

Respondent contends Petitioner procedurally defaulted this claim by failing to raise it on direct appeal (doc. 24 at 17). Notwithstanding the procedural default, Respondent contends Petitioner failed to demonstrate that the trial court's adjudication of the claim was contrary to or an unreasonable application of clearly established federal law (*id.* at 17–21).

The state court record demonstrates that Petitioner did not present this claim of trial court error on direct appeal, which was the proper vehicle for doing so. Therefore, the claim is procedurally defaulted for purposes of federal habeas. To the extent Petitioner asserts IAAC as cause for the procedural default, he exhausted this claim in his state habeas petition by arguing that his appellate counsel was ineffective for failing to argue on direct appeal that the trial court erred by denying defense counsel's motion to suppress Petitioner's confession (Ex. Y). The First DCA denied the habeas petition pursuant to Rule 9.141(d)(5) of the Florida Rules of Appellate Procedure, which provides a time limit for the filing of petitions alleging ineffective assistance of appellate counsel (Ex. AA).

Rule 9.141(d) of the Florida Rules of Appellate Procedure sets forth the procedural requirements for petitions alleging IAAC, including the time limits for filing a petition:

> A petition alleging ineffective assistance of appellate counsel on direct review shall not be filed more than 2 years after the judgment and sentence become final on direct review unless it alleges under oath with a specific factual basis that the petitioner was affirmatively misled about the results of the appeal by counsel. In no case shall a petition alleging ineffective assistance of appellate counsel on direct review be filed more than 4 years after the judgment and sentence become final on direct review.

Fla. R. App. P. 9.141(d)(5). By citing to Rule 9.141(d)(5), the First DCA clearly and expressly stated that it was relying on a state procedural rule to resolve Petitioner's claim. The state court's decision on the procedural issue rested entirely on state law grounds and was not intertwined with an interpretation of federal law. The time limits set forth in Fla. R. App. P. 9.141 are firmly established and regularly followed, and were not applied in an arbitrary or unprecedented fashion. The mandate in Petitioner's direct appeal issued on March 3, 2011 (Ex. L). Petitioner's petition alleging IAAC was filed on April 5, 2013, more than two years after the mandate. It was not arbitrary for the First DCA to find Petitioner's petition untimely, because the petition raised an issue that existed at the time of the direct appeal. Because Petitioner's IAAC claim was presented in state court and rejected on the independent and adequate state ground of procedural bar, and he has not demonstrated cause to excuse his failure to present a timely state habeas petition, he cannot rely upon IAAC to overcome the procedural bar to his claim of trial court error asserted in Ground Five. *See* Edwards v. Carpenter, 529 U.S. 446, 451–53, 120 S. Ct. 1587, 146 L. Ed. 2d 518 (2000).

Petitioner's failure to exhaust his federal claim concerning the trial court's denial of the motion to suppress Petitioner's confession, and his failure to demonstrate he is entitled to review of his claim under a recognized exception to the procedural bar, precludes federal review of Ground Five.

    F.    <u>Ground Six: "Trial court erred in denying Defendant's motion to suppress evidence that was recovered during an illegal search and seizure by the Pensacola Police Department."</u>

Petitioner contends the trial court erred by denying defense counsel's motion to suppress evidence obtained during a search of his vehicle (doc. 1 at 13–16). He contends the evidence presented to the trial court showed that officers failed to obtain a search warrant even though they had time to do so, and there were no exigent circumstances justifying the warrantless search (*id.*).

Respondent contends Petitioner procedurally defaulted this claim by failing to raise it on direct appeal (doc. 24 at 22).  Respondent additionally contends Petitioner is not entitled to relief pursuant to Stone v. Powell, 428 U.S. 465 (1976) (*id.*).  Notwithstanding the procedural default and Powell, Respondent argues Petitioner's claim is without merit (*id.*).

Federal courts are precluded from conducting post-conviction review of a petitioner's Fourth Amendment claim of an unconstitutional search or seizure if the state courts provided "an opportunity for full and fair litigation" of that claim.  *See* Powell, 428 U.S. at 494; *see also* Bradley v. Nagle, 212 F.3d 559, 564 (11th Cir. 2000); Huynh v. King, 95 F.3d 1052, 1058 (11th Cir. 1996). This bar applies if the State has provided an opportunity for full and fair litigation of the claim "whether or not the defendant employs those processes."  Huynh, 95 F.3d at 1058 (citing Caver v. Alabama, 577 F.2d 1188, 1192 (5th Cir. 1978)).[9]  "In [Powell], the Court reasoned that, so long as a defendant had the opportunity to present his Fourth Amendment claims to the state trial and appellate courts, the objectives of the exclusionary rule have been satisfied."  Bradley, 212 F.3d at 564–65.  For a claim to be fully and fairly considered by the state courts, where there are facts in dispute, full and fair consideration requires "consideration by the fact-finding court, and at least the availability of meaningful appellate review by a higher state court."  Mincey v. Head, 206 F.3d 1106, 1126 (11th Cir. 2000) (quoting Tukes v. Dugger, 911 F.2d 508, 513–14 (11th Cir. 1990)); Caver, 577 F. 2d at 1192 ("'[F]ull and fair consideration' of a fourth amendment claim [includes] at least one evidentiary hearing in a trial court and the availability of meaningful appellate review when there are facts in dispute, and full consideration by an appellate court when the facts are not in dispute."); *see also* Powell, 428 U.S. at 494 n.36.[10]  Furthermore, even if a state court erred in its Fourth Amendment

---

[9] In Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981.

[10] The Supreme Court, in a footnote in its Powell decision, cited its earlier decision in Townsend v. Sain to elaborate on the meaning of the phrase "full and fair litigation."  *See* Townsend v. Sain, 372 U.S. 293, 83 S. Ct. 745, 9 L. Ed. 2d 770 (1963), *overruled in part by*, Keeney v. Tamayo-Reyes, 504 U.S. 1, 5, 112 S. Ct. 1715, 1717, 118 L. Ed. 2d 318 (1992).  Townsend lays out certain factors for a court to consider in resolving whether an issue has been fully and fairly litigated.  Among these factors are whether there was a hearing procedure available, how well the factual issues were developed, and whether the trial court's findings of fact are adequately supported by the record.  *See* Townsend, 372 U.S. at 312–13.

analysis, a federal court will not consider the merits of a Fourth Amendment claim.  *See* Swicegood v. State of Ala., 577 F.2d 1322, 1324 (5th Cir. 1978).

The record demonstrates Petitioner was given a full and fair opportunity to present facts to the trial court.  Petitioner's trial counsel adopted the motion to suppress filed by co-defendant Kirtis Heard (*see* Ex. D).  In the motion to suppress, counsel argued that the search of Petitioner's vehicle violated the Fourth Amendment because officers conducted the search without a warrant, officers had sufficient time to obtain a warrant prior to the search, and no exigent circumstances existed to justify the warrantless search (*id.*).  This is the same claim presented in Ground Six of Petitioner's federal petition.  In the trial court, defense counsel and the prosecutor stipulated that the evidence taken by the court and the arguments of counsel at the hearing on co-defendant Heard's motion to suppress, would be adopted for purposes of Petitioner's motion to suppress (*see* Ex. E).  After considering the evidence and the arguments of counsel, the trial court made written findings of fact and concluded that, based upon the totality of the circumstances, law enforcement had, at a minimum, reasonable suspicion that criminal activity was ongoing and therefore appropriately stopped Petitioner's vehicle and detained its occupants for further investigation (*id.*).  The court further concluded that when the canine alerted on Petitioner's vehicle for narcotics, law enforcement then had probable cause to search the vehicle (*id.*).  Petitioner had an opportunity for appellate review of the trial court's decision, but he did not avail himself of it.  As previously noted, the Powell bar applies if the State has provided an opportunity for full and fair litigation of the claim "whether or not the defendant employs those processes."  Huynh, 95 F.3d at 1058.

In light of the trial court's careful consideration and explicit findings on the Fourth Amendment issue, and the availability of appellate court review of the Fourth Amendment issue, the undersigned concludes Petitioner was afforded a full and fair opportunity to litigate the Fourth Amendment issue, in satisfaction of Powell.  Therefore, federal review of his Fourth Amendment claim is unavailable.

V.     CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.    That the petition for writ of habeas corpus (doc. 1) be **DENIED**.

2.    That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 27<u>th</u> day of February 2015.


<u>/s/ Elizabeth M. Timothy</u>
**ELIZABETH M.  TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


**<u>NOTICE TO THE PARTIES</u>**

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  <i>See</i> 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**